IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| **CHRISTOPHER REGINALD COX,** | * | |
| Plaintiff, | * | |
| v. | * | Case No. GJH-19-2731 |
| **ASRESAHEGN GETACHEW,** *et al.*, | * | |
| Defendants. | * | |

\* \* \* \* \* \* \* \* \* \* \* \* \*

## MEMORANDUM OPINION

Plaintiff Christopher Reginald Cox, a prisoner confined at North Branch Correctional Institution ("NBCI"), brings this civil rights action against Defendants Frank Bishop, Asresahegn Getachew, Bill Beeman, and Holly Pierce. ECF No. 1. Cox claims Defendants failed to provide him medical supplies and were deliberately indifferent to his medical needs in violation of the Eighth Amendment and the Americans with Disabilities Act, 42 U.S.C. §§12101 *et seq.* ECF No. 1-1 at 4–5. Pending before the Court is Defendant Bishop's Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 17, Defendants Getachew, Beeman, and Pierce's (collectively "the Wexford Defendants'") Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 24, Cox's Motion to Appoint Counsel, ECF No. 21, and the Wexford Defendants' Third Motion for Extension of Time, ECF No. 23. No hearing is necessary. *See* Loc. R. 105.6 (D. Md. 2018). For the following reasons, Cox's Motion to Appoint Counsel is denied, the Wexford Defendants' Third Motion for Extension of Time to File Answer is granted *nunc pro tunc*, and Defendants' motions to dismiss or, in the alternative, for summary judgment are granted.

**I.     BACKGROUND**

    **A.     Plaintiff's Allegations**

In his verified Complaint, Cox states that he has a spinal cord injury, bladder dysfunction, lower bowel dysfunction, and chronic asthma. ECF No. 1-1 at 3.[1] Cox claims that every week he requires various medical supplies, including two straight catheters, seven condom catheters, seven diapers, seven "adhesive skin prep," and three lubricants. *Id.* He also requires one leg bag every two weeks and one "Foley bag" each month. *Id.* According to Cox, on August 1, 2017, he requested his weekly medical supplies from Nurse Kim, which she denied because the contract with Wexford, the medical supplier, had terminated. *Id.* Subsequently, Cox claims he filed a grievance that was deemed meritorious by the acting warden, Jeff Nines. *Id.* at 4.

Cox alleges that, despite Cox filing various grievances, Defendants continue to be deliberately indifferent to his medical needs. For example, Cox filed a grievance on July 16, 2019, after twenty-four hours passed without receiving his medical supplies. *Id.* at 4. Without bio-hazard bags, Cox claims he must touch bodily waste and, without access to his medical supplies, he is forced "to sit on the toilet all day and all night," causing sleep deprivation as well as severe pain in his stomach and genitals. *Id.* at 4–5. According to Cox, he has repeatedly requested placement in a single medical cell as he has experienced tension and hostility with his cellmates due to the unsanitary conditions caused by his lack of medical supplies. *Id.* at 5.

Cox alleges that Defendant Bishop, the warden of NBCI, has failed to "use the full extent of his powers" to address Cox's Administrative Remedy Procedure complaints ("ARPs") concerning medical supplies, Cox's need for a single cell, and Cox's requests to see medical providers. ECF No. 1 at 2. He also asserts that Defendant Beeman has "not fulfilled his duty as

---

[1] Pin cites to documents filed on the Court's electronic filing system (CM/EC) refer to the page numbers generated by that system.

the Medical Nurse Supervisor." *Id.* Cox claims that none of his request forms filed between 2018 and 2019 have been answered. *Id.* Additionally, Cox alleges that Defendant Getachew, the Medical Director, has not seen Cox for any of his chronic care issues and that Defendant Pierce, a Medical Chronic Care Provider, has also failed to see him, even though Defendant Bishop urged her to do so. *Id.*

### B. Cox's Medical Records

The Wexford Defendants state that Plaintiff is a twenty-nine-year-old male with a medical history of asthma, a shotgun injury, lumbago, spastic hemiplegia,[2] and urinary incontinence, as well as a mental health history of bipolar disorder and post-traumatic stress disorder. ECF No. 24-5 ¶ 3. During the period of July 17, 2017 to December 24, 2018, Cox submitted forty sick call requests, but none complained that he was not receiving his required medical supplies. *See id.* ¶ 8; ECF No. 24-4 at 71–111. Below is a summary of those sick calls.

On July 30, 2017, Cox requested toenail clippers during a sick call, and they were provided. ECF No. 24-4 at 2. On August 1, 2017, Cox was seen for his asthma by Dr. Ashraf in chronic care, during which his Singulair prescription was refilled and his medical supplies were ordered—to be supplied weekly—including one 12-inch plain straight catheter, seven size 36 condom catheters, one urinary bag, and one Foley catheter. *Id.* at 3–7. On August 25, 2017, during a nurse sick call, Cox was referred to a dentist for medication following oral surgery. *Id.* at 8–9. Cox refused to go to the clinic to see Dr. Ashraf on August 29, 2017. *Id.* at 10–11. Cox had a nurse sick call visit on October 1, 2017, for ear pain and congestion. *Id.* at 12–13. On October 11, 2017, Cox returned to chronic care to see Dr. Ashraf and, during that visit, Cox's

---

[2] The Wexford Defendants explain that spastic hemiplegia is a type of spasticity affecting one side of the body. ECF No. 24-3 at 2, *see also*, Spastic Hemiplegia Cerebral Palsy, Cerebral Palsy Guidance, https://www.cerebralpalsyguidance.com/cerebral-palsy/types/spastic-hemiplegia/ (last visited February 18, 2021) (quoting the National Institutes of Health).

asthma was under control, his medications were renewed, and his medical supplies were ordered. *Id.* at 14–17. Additionally, during Cox's October 11, 2017 appointment, Dr. Ashraf ordered a CT scan of Cox's neck and face. *Id.*

On November 11, 2017, Cox was seen by Defendant Pierce and, during the appointment, informed her that he had neuropathic nerve pain as a result of gunshot wounds suffered in 2014. *Id.* at 18–21. Cox requested that his prescriptions for 1200 mg of Neurontin and 20 mg of Baclofen twice daily be renewed in perpetuity. *Id.* Cox's prescriptions for Neurontin and Singulair were renewed. *Id.* On December 26, 2017, Cox's Singulair prescription was renewed again. *Id.* at 24.

On January 8, 2018, Cox was seen in chronic care by RNP Self for his asthma. *Id.* at 25–27. Defendant Pierce saw Cox again in chronic care on April 4, 2018; she assessed his asthma and lumbago as stable. *Id.* at 28–31. On April 13, 2018, Defendant Pierce renewed Cox's medical supply order after he reported not receiving them; the order included two standard size straight catheters per week, seven condom catheters per week, seven diapers per week, one leg bag every two weeks, one Foley bag per month, seven adhesive skin preps per week, and three lubricants per week. *Id.* at 32. No biohazard bags were included in the order. *Id.* The visit ended for safety concerns after Cox became angry and stated that he had killed fifteen police officers and a cellmate and would do it again. *Id.*

On May 5, 2018, Cox requested renewal of his Nortriptyline and Baclofen prescriptions; he was referred to a provider for medication renewal. *Id.* at 34–35. Cox was seen by Defendant Pierce on June 5, 2018; during that appointment, his asthma and lumbago were stable, he was prescribed a QVAR inhaler for his asthma, and had various medications renewed. *Id.* at 36–39. During a nurse sick call on August 11, 2018, Cox complained of leg and back pain, requested to

return to physical therapy, asserted he had not been seen in chronic care for his asthma, and stated that his inhaler was different than those he had been prescribed in the past. *Id.* at 41–42. Cox was referred to a provider. *Id.*

On September 21, 2018, Cox was seen by a nurse for a mental health segregation review; he denied any suicidal ideations. *Id.* at 43–45. Cox was seen on November 9, 2018, for an allergic reaction; Defendant Pierce gave orders for a 125 mg solumedrol injection. *Id.* at 46–47. On November 13, 2018, Cox complained of blurry vision; a nurse referred him to a provider. *Id.* at 48–49. On November 14, 2018, Cox refused to have a physical exam performed. *Id.* at 50. Defendant Pierce submitted a consult on November 27, 2018 for a CT scan of Cox's face, neck, and left mandible as suggested by the University of Maryland OMFS clinic. *Id.* at 51.

On the morning of December 1, 2018, Cox was escorted to see a nurse following a physical altercation. *Id.* at 54–56. Cox was able to stand and walk independently and showed no signs or symptoms of respiratory distress. *Id.* Cox's face was cleaned of pepper spray, and band aids were applied to small lacerations on his thumb and pointer fingers. *Id.* That afternoon Cox was seen again after a second altercation, during which he was so belligerent and combative that the pepper spray could not be cleaned from his face and he had to be removed. *Id.* at 57–59. On December 21, 2018, Cox saw Dr. Rohrer, a mental health doctor, after he stabbed another inmate to avoid placement with a cellmate. *See id.* at 60–70. Wexford ceased to be the medical contractor for the Maryland Department of Public Safety and Correctional Services on January 1, 2019. ECF No. 24-3 at 5.

C. **Procedural History**

Cox, proceeding pro se, brought the instant civil action against Defendants on September 16, 2019, alleging claims for deliberate indifference and supervisory liability under 42 U.S.C.

§ 1983.³ ECF No. 1. On July 28, 2020, Defendant Bishop filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 17, which he supplemented on July 28, 2020, ECF No. 18. Cox responded in opposition on August 13, 2020. ECF No. 20. On October 8, 2020—after filing three Motions for Extension of Time, ECF Nos. 12, 16, 23, two of which have been granted, ECF Nos. 13, 22, and one of which is still pending, ECF No. 23—the Wexford Defendants filed a Motion to Dismiss or, in the Alternative, Motion for Summary Judgment, ECF No. 24. Cox responded in opposition on October 26, 2020, ECF No. 26, and the Wexford Defendants replied on November 6, 2020, ECF No. 27. Cox has also filed two Motions for Appointment of Counsel, ECF Nos. 5, 21, one of which has been denied, ECF No. 22, and the other is still pending, ECF No. 21.

## II.   DISCUSSION

### A.   Motion to Appoint Counsel

"A pro se prisoner does not have a general right to counsel in a § 1983 action." *Evans v. Kuplinski*, 713 F. App'x 167, 170 (4th Cir. 2017). A federal district court judge's power to appoint counsel under 28 U.S.C. § 1915(e)(1) is discretionary, and an indigent claimant must present "exceptional circumstances." *Id.* at 170; *Miller v. Simmons*, 814 F.2d 962, 966 (4th Cir. 1987). Exceptional circumstances exist where a "pro se litigant has a colorable claim but lacks the capacity to present it[.]" See *Whisenant v. Yuam*, 739 F.2d 160, 163 (4th Cir. 1984), *abrogated on other grounds by Mallard v. U.S. Dist. Ct. for S. Dist. Of Iowa*, 490 U.S. 296, 298 (1989) (holding that 28 U.S.C. § 1915 does not authorize compulsory appointment of counsel).

Upon careful consideration of the motions and previous filings by Cox, the Court finds that he has demonstrated the wherewithal to either articulate the legal and factual basis of his

---

³ Plaintiff also references the Americans with Disabilities Act ("ADA") in his Complaint, and the Court assumes for the purposes of this memorandum opinion that Plaintiff also intended to bring an ADA claim against Defendants.

claims himself or secure meaningful assistance in doing so. Moreover, the issues pending before the Court are not unduly complicated. Therefore, there are no exceptional circumstances that would warrant the appointment of an attorney to represent Cox under 28 U.S.C. § 1915(e)(1). The Court denies Cox's Motion to Appoint Counsel.

### B. Wexford Defendants' Third Motion for Extension of Time

On August 26, 2020, the Court granted the Wexford Defendants an extension of time to respond to Cox's Complaint, extending the deadline to respond through September 28, 2020. ECF No. 22. On September 25, 2020, the Wexford Defendants filed their Third Motion for Extension of Time, seeking an additional extension through October 19, 2020. ECF No. 23. Thereafter, Wexford Defendants filed their Motion to Dismiss or, in the Alternative, for Summary Judgment on October 8, 2020. ECF No. 24. As such, the Wexford Defendants' Motion shall be granted *nunc pro tunc* to September 25, 2020.

### C. Defendants' Motions to Dismiss or, in the Alternative, for Summary Judgment

#### 1. Standards of Review

To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*. at 678. "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id*. (citing *Twombly*, 550 U.S. at 555 ("a plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do")).

The purpose of Rule 12(b)(6) "is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006) (citation and internal quotation marks omitted). When deciding a motion to dismiss under Rule 12(b)(6), a court "must accept as true all of the factual allegations contained in the complaint[,]" and must "draw all reasonable inferences [from those facts] in favor of the plaintiff." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.*, 637 F.3d 435, 440 (4th Cir. 2011) (citations and internal quotation marks omitted). The Court need not, however, accept unsupported legal allegations, *see Revene v. Charles Cty. Comm'rs*, 882 F.2d 870, 873 (4th Cir. 1989), legal conclusions couched as factual allegations, *see Papasan v. Allain*, 478 U.S. 265, 286 (1986), or conclusory factual allegations devoid of any reference to actual events, *see United Black Firefighters of Norfolk v. Hirst*, 604 F.2d 844, 847 (4th Cir. 1979).

Defendants' Motions are styled as Motions to Dismiss or, in the Alternative, Motions for Summary Judgment. If the Court considers materials outside the pleadings, the Court must treat a motion to dismiss as one for summary judgment. Fed. R. Civ. P. 12(d). When the Court treats a motion to dismiss as a motion for summary judgment, "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." *Id*. When the moving party styles its motion as a "Motion to Dismiss or, in the Alternative, for Summary Judgment," as is the case here, and attaches additional materials to its motion, the nonmoving party is, of course, aware that materials outside the pleadings are before the Court, and the Court can treat the motion as one for summary judgment. *See Laughlin v. Metro. Washington Airports Auth.*, 149 F.3d 253, 260–61 (4th Cir. 1998). Further, the Court is not prohibited from granting a motion for summary judgment before the commencement of discovery. *See* Fed. R. Civ. P. 56(a) (stating

8

that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact" without distinguishing pre-or post-discovery).

Summary judgment is appropriate if "materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," Fed. R. Civ. P. 56(c), show that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The party moving for summary judgment bears the burden of demonstrating that no genuine dispute exists as to material facts. *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). If the moving party demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify specific facts showing that there is a genuine issue for trial. *See Celotex Corp.*, 477 U.S. at 322–23. A material fact is one that "might affect the outcome of the suit under the governing law." *Spriggs v. Diamond Auto Glass*, 242 F.3d 179, 183 (4th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party. *Anderson*, 477 U.S. at 248. However, the nonmoving party "cannot create a genuine issue of material fact through mere speculation or the building of one inference upon another." *Beale v. Hardy*, 769 F.2d 213, 214 (4th Cir. 1985) (citation omitted). When ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255.

While the Court may rule on a motion for summary judgment prior to commencement of discovery, *see, e.g.*, *Demery v. Extebank Deferred Comp. Plan (B)*, 216 F.3d 283, 286 (2d Cir.

2000), Federal Rule of Civil Procedure 56(d) "mandates that summary judgment be denied when the nonmovant has not had the opportunity to discover information that is essential to his opposition." *Pisano v. Strach*, 743 F.3d 927, 931 (4th Cir. 2014) (internal citation and quotation marks omitted). To obtain Rule 56(d) relief, the non-moving party bears the burden of showing how discovery "could possibly create a genuine issue of material fact sufficient . . . to survive summary judgment, or otherwise affect the court's analysis." *Poindexter v. Mercedes-Benz Credit Corp.*, 792 F.3d 406, 411 (4th Cir. 2015) (internal citation and quotation marks omitted).

Moreover, where, as here, the plaintiff is proceeding pro se, the Court reads the pleadings generously. *See Erickson v. Pardus*, 551 U.S. 89, 94 (2007). At the same time, the Court must also fulfill its "affirmative obligation . . . to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Balt. Ravens Football Club, Inc.*, 346 F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted).

### 2. Cox's § 1983 Claims

The main thrust of Cox's § 1983 claims is that Defendants "have been deliberately indifferent in regard to Plaintiff's serious medical needs[.]" ECF No. 1-1 at 5. "Deliberate indifference to serious medical needs of prisoners constitutes 'unnecessary and wanton infliction of pain . . . proscribed by the Eighth Amendment.'" *Powell v. Erwin*, 927 F.2d 596 (4th Cir. 1991) (citing *Estelle v. Gamble*, 429 U.S. 97, 104 (1976)). Thus, although Cox asserts—without explaining—that his Fourteenth Amendment rights have been violated, ECF No. 1-1 at 5, the Court finds Cox's claims are properly analyzed under the Eighth Amendment of the United States Constitution.

The Eighth Amendment prohibits "unnecessary and wanton infliction of pain" by virtue of its guarantee against cruel and unusual punishment. *Gregg v. Georgia*, 428 U.S. 153, 173

(1976). To state an Eighth Amendment claim for denial of medical care, Cox must demonstrate that Defendants' acts or omissions amounted to deliberate indifference to a serious medical need. *See Estelle*, 429 U.S. at 106.

Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the prison staff were aware of the need for medical attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834–37 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209–10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (explaining that there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (noting that failure to provide diabetic inmate with insulin, where physician acknowledged it was required, is evidence of objectively serious medical need).

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839–40. "Actual knowledge or awareness on the part of the alleged inflicter . . . becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective

knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

"Deliberate indifference is a very high standard—a showing of mere negligence will not meet it." *Grayson v. Peed*, 195 F.3d 692, 695–96 (4th Cir. 1999); *see also Jackson*, 775 F.3d at 178 ("[M]any acts or omissions that would constitute medical malpractice will not rise to the level of deliberate indifference."). "[T]he Constitution is designed to deal with deprivations of rights, not errors in judgment, even though such errors may have unfortunate consequences." *Grayson*, 195 F.3d at 695–96; *see also Jackson*, 775 F.3d at 178 (describing the applicable standard as "exacting"). A mere disagreement between an inmate and a physician over the appropriate level of care does not establish an Eighth Amendment violation "absent exceptional circumstances." *Scinto*, 841 F.3d at 225. Further, the inmate's right to treatment is "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical necessity and not simply that which may be considered merely desirable." *United States v. Clawson*, 650 F.3d 530, 538 (4th Cir. 2011) (citing *Bowring v. Godwin*, 551 F.2d 44, 47–48 (4th Cir. 1977)).

### a. Defendant Bishop

Cox's Complaint alleges that on numerous occasions he brought various medical supply issues to Defendant Bishop's attention via ARPs and letters, including a March 29, 2018 letter Cox wrote to Defendants Bishop and Beeman regarding receipt of a partial package of medical supplies. ECF No. 1-1 at ¶¶ 16–17. Cox claims that Defendant Bishop continued to be deliberately indifferent to Cox's medical needs despite being informed of the problem. *Id.* ¶ 18.

Cox also includes Defendant Bishop in general allegations of deliberate indifference to Cox's health and safety because he did not provide Cox with a single cell and did not issue the necessary medical supplies. *Id.* ¶¶ 26–27.

To the extent Cox sues Defendant Bishop under 42 U.S.C. § 1983 in his official capacity as the NBCI Warden, Cox's claim is barred by the Eleventh Amendment. The Eleventh Amendment provides that "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. In effect, the Eleventh Amendment bars suits for damages against a state in federal court unless the state has waived its sovereign immunity or Congress has abrogated its immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100–02 (1984) ("It is clear, of course, that in the absence of consent a suit in which the State or one of its agencies or departments is named as the defendant is proscribed by the Eleventh Amendment."). Moreover, "a suit against a state official in his or her official capacity is not a suit against the official but rather is a suit against the official's office. . . . As such, it is no different from a suit against the State itself." *Will v. Michigan Dep't of State Police*, 491 U.S. 58, 71 (1989) (internal citation omitted).

Congress did not abrogate the states' sovereign immunity when it enacted 42 U.S.C. § 1983, *Will*, 491 U.S. at 66, nor has the State of Maryland waived its sovereign immunity in the instant federal case. While the State of Maryland has waived its sovereign immunity for certain types of cases brought in state courts, *see* Md. Code Ann., State Gov't § 12-201(a), it has not waived its immunity, under the Eleventh Amendment, to suit in federal court. *Halderman*, 465 U.S. at 99 (emphasis in original) ("A State's constitutional interest in immunity encompasses not merely *whether* it may be sued, but *where* it may be sued."). As such, Cox's claim under 42

13

U.S.C. § 1983 asserted against Defendant Bishop in his official capacity is barred.

To the extent Cox's § 1983 claim is against Defendant Bishop in his individual capacity, Cox fails to state an Eighth Amendment claim for deliberate indifference or supervisory liability. While Cox has sufficiently plead the seriousness of his medical condition, Cox's bare allegations that he wrote a single letter to Defendant Bishop and Defendant Bishop failed to use his full power to address that letter or various other ARPs filed by Cox are insufficient to demonstrate that Defendant Bishop recklessly disregarded a substantial risk of harm to Cox. *See Farmer*, 511 U.S. at 839.

Moreover, liability under § 1983 attaches only upon personal participation by a defendant in the constitutional violation. If a plaintiff has not alleged any personal connection between a defendant and a denial of their constitutional rights, the claim must fail. *See Vinnedge v. Gibbs*, 550 F.2d 926, 928 (4th Cir. 1977). It is well established that the doctrine of respondeat superior does not apply in § 1983 claims. *See Love-Lane v. Martin*, 355 F.3d 766, 782 (4th Cir. 2004) (no respondeat superior liability under § 1983); *see also Trulock v. Freeh*, 275 F.3d 391, 402 (4th Cir. 2001) (no respondeat superior liability in a Bivens suit). Rather, liability of supervisory officials under § 1983 "is premised on 'a recognition that supervisory indifference or tacit authorization of subordinates' misconduct may be a causative factor in the constitutional injuries they inflict on those committed to their care.'" *Baynard v. Malone*, 268 F.3d 228, 235 (4th Cir. 2001) (quoting *Slakan v. Porter*, 737 F.2d 368, 372 (4th Cir. 1984)). Consequently, supervisory liability under § 1983 must be supported with evidence that: (1) the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff; (2) the supervisor's response to the knowledge was so inadequate as to show deliberate indifference to or tacit

authorization of the alleged offensive practices; and (3) there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff. *See Shaw v. Stroud*, 13 F.3d 791, 799 (4th Cir. 1994).

Cox fails to plead any factual details indicating that Defendant Bishop had actual or constructive knowledge of a subordinate's behavior that risked constitutional injury to Cox, nor has Cox alleged that Defendant Bishop interfered with any medical provider's performance or tacitly authorized a constitutional violation. The Court thus dismisses Cox's §1983 claim against Defendant Bishop for failure to state a claim.

b. **The Wexford Defendants**

The Wexford Defendants argue they are entitled to summary judgment as the undisputed facts demonstrate that the Wexford Defendants were not deliberately indifferent to Cox nor did they ignore Cox's medical needs. ECF No. 24-3 at 15. As Cox has not filed an affidavit under Rule 56(d) or proffered any other grounds that summary judgment is unwarranted at this time, the Court will convert the Wexford Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary Judgment into a motion for summary judgment with respect to Cox's § 1983 claims against the Wexford Defendants.

As discussed above, to demonstrate deliberate indifference to a serious medical need, Cox must show that he was objectively suffering from a serious medical need and that, subjectively, the Wexford Defendants were aware of his need for medical attention and failed to provide it or ensure that it was made available to him. *See Farmer*, 511 U.S. at 834–37.

During the relevant time period, Defendant Getachew was the Medical Director, Defendant Beeman was the Assistant Director of Nursing, and Defendant Pierce was a Nurse Practitioner (NP) at NBCI. ECF No. 24-5 ¶¶ 1, 6. In the Department of Public Safety and

Correctional Services ("DPSCS"), inmates are not assigned permanent medical providers and see whichever provider is available onsite on a given day. *Id.* ¶ 5. During the time Defendant Getachew was Medical Director, he did not see Cox, *id.*, and, as there is nothing in the record which indicates Defendant Getachew had any subjective awareness of Cox's condition, he could not have taken any deliberate action to interfere with Cox's medical needs. Similarly, Cox did not see Defendant Beeman during the relevant time period. Although Cox sent Defendant Beeman a letter concerning orders for his medical supplies, ECF No. 1-1 ¶ 16, there is no evidence in the record of Defendant Beeman's subjective intent sufficient for the Court to find deliberate indifference to Cox's need for medical supplies. Finally, Cox's medical records indicate that Defendant Pierce did see Cox on numerous occasions—except on November 14, 2018, when he refused a medical exam. *See* ECF No. 24-3 at 50. Further, the evidence presented indicates that on at least one occasion Defendant Pierce submitted a medical supply order in response to Cox's claim that he had not been receiving them. *Id.* at 32.

      Viewing the evidence in the light most favorable to Cox, the Court cannot find that the medical staff were deliberately indifferent to his needs. Cox was scheduled for sick calls and provider visits, his condition was continuously evaluated, and his grievance regarding medical supplies was resolved. None of the medical staff's decisions amount to an act or omission "for the very purpose of causing harm or with knowledge that harm will result." *Farmer*, 511 U.S. at 835. Moreover, an Eighth Amendment claim is also not presented where, as here, Cox alleges that he was not provided the exact medical treatment that he desired in the form of biohazard bags and single cell placement.[4] As previously indicated, "[d]isagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim unless

---

[4] Defendant Getachew asserts that biohazard bags are only necessary for infectious or radioactive materials and that Cox's urinary incontinence does not present a need for single cell placement. ECF No. 24-5 at ¶¶ 10, 11.

16

exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985) (citing *Gittlemacker v. Prasse*, 428 F.2d 1, 6 (3d Cir. 1970)).

Furthermore, Cox does not demonstrate that any delay in receiving his medical supply order exposed him to a serious or significant injury. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent"). Cox claims that on two occasions, August 1, 2017, and July 16, 2019, he filed ARPs to address delays in receiving his medical supplies. He states that without his medical supplies he experiences sleep deprivation from using the toilet throughout the night and experiences some stomach and genitalia discomfort. However, Cox acknowledges in his first grievance that he had sufficient supplies to last through August 1, 2017. ECF No. 24-6 at 1; ECF No. 26-1 at 1. Cox was seen by Dr. Ashraf on August 1, 2017, at which time his medical supplies were ordered to be provided weekly. ECF No. 24-4 at 3. Moreover, Defendant Getachew attests that a delay in Cox's urinary incontinence supplies, including diapers and catheters, would not cause him stomach or genital pain. ECF No. 24-5 ¶ 9. Getachew further explains that it is feasible to wash and reuse a catheter until supplies were delivered. *Id*.

Additionally, Cox's complaint regarding the July 16, 2019 delay in delivery of medical supplies occurred after the Wexford contract ended and does not support a finding that the Wexford Defendants were deliberately indifferent to his serious medical need. Regardless, the July 16, 2019 delay is insufficient to support a deliberate indifference claim because, although Cox filed an ARP on July 16, 2019 after going twenty-four hours without medical supplies, Cox provides a receipt he signed that same date acknowledging that his medical supplies were provided as well as a response to his ARP, which indicates that following Cox's complaint he received his supplies and had not suffered any injury. ECF No. 26-4 at 24; ECF No. 26-1 at 7. As

such, the Court grants summary judgment in the Wexford Defendants' favor.

### 3. Cox's Americans with Disabilities Act Claims

Cox also references the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101 *et seq.*, in his Complaint. ECF No. 1-1 at 2. To the extent Cox intended to bring an ADA claim, however, the Court dismisses those claims under Fed. R. Civ. P. 12(b)(6) for failure to state a claim for which relief can be granted.

#### a. Defendant Bishop

To the extent Cox intended to bring an ADA claim against Defendant Bishop, that claim is barred. "Title II of the ADA does not provide for individual capacity suits against state officials." *Barnes v. Young*, 565 F. App'x 272, 273 (4th Cir. 2014) (internal punctuation and citations omitted). As a result, such a suit may only be brought against a defendant in an official capacity. As discussed above, *see supra* § II.C.2.a, under "the Eleventh Amendment, States [and state officials acting in their official capacity] are immunized from suits brought in federal court, absent a waiver from the State or a clear, constitutionally permissible Congressional exercise of its power under the Fourteenth Amendment." *Barnes*, 565 F. App'x at 273. The ADA, however, includes such a waiver where the ADA violations at issue also violate the Fourteenth Amendment. *See United States v. Georgia*, 546 U.S. 151, 153 (2006). Because Cox has not sufficiently alleged that Defendant Bishop violated Cox's constitutional rights and the Court dismisses Cox's § 1983 claim against Defendant Bishop, the Court concludes Cox's ADA claim is barred.

#### b. The Wexford Defendants

To adequately establish a violation of the ADA, Cox must prove: "(1) that he has a disability; (2) that he is otherwise qualified for the . . . benefit in question; and (3) that he was

excluded from the . . . benefit due to discrimination solely on the basis of disability." *Doe v. Univ. of Md. Med. Sys. Corp.*, 50 F.3d 1261, 1264–65 (4th Cir. 1995). However, absent some improper discrimination due to disability, inadequate health care, negligent health care, or even medical care amounting to medical malpractice is not the kind of care that constitutes an ADA violation. *See Buchanan v. Maine*, 469 F.3d 158, 174–75 (1st Cir. 2006) (holding there was no ADA claim where "plaintiff's claim came down to specifics that demonstrated that the claim was not about discriminatory denial of services, but rather about the adequacy of treatment"); *Fitzgerald v. Corr. Corp. of Am.*, 403 F.3d 1134, 1144 (10th Cir. 2005) ("[T]he ADA nor the Rehabilitation Act provide remedies or alleged medical negligence."); *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996) ("The ADA does not create a remedy for medical malpractice"). In the instant case, Cox has only sufficiently alleged that the medical services provided by the Wexford Defendants were insufficient or delayed, not that services were denied for discriminatory reasons. Thus, the Court dismisses Cox's ADA claims against Wexford Defendants.

### III.  CONCLUSION

For the foregoing reasons, Cox's Motion to Appoint Counsel is DENIED; Wexford Defendants' Third Motion for Extension of Time is GRANTED *nunc pro tunc*; Defendant Bishop is DISMISSED; and the Wexford Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is GRANTED.

A separate Order follows.

Date: February   26, 2021                                  __/s/_____
                                                                                GEORGE J. HAZEL
                                                                                UNITED STATES DISTRICT JUDGE